UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA  v.  ROBERT KEITH PACKER,  Defendant. | CRIMINAL NO. 1:21-CR-103 CJN |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO STAY HIS SENTENCE AND REMAIN ON PERSONAL
RECOGNIZANCE PENDING APPEAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to Defendant's Motion to Stay his Sentence, and Remain on Personal Recognizance Pending Appeal. Doc. 58, Def. Motion.

**BACKGROUND[1]**

Robert Packer drove from his home in Newport News, Virginia to Washington, D.C. to attend the Stop the Steal Rally promoted by former President Trump. Packer knew when he came to Washington, D.C. that people were there to protest the 2020 presidential election and that after the speeches there would be a march to the U.S. Capitol. On the day of the Stop the Steal Rally, January 6, 2021, Packer wore a distinctive sweatshirt with "Camp Auschwitz" and "Work Means Freedom"[2] on the front and the word "Staff" on the back. Underneath, he wore a T-shirt that

---

[1] The Background statement is taken from the Government's Sentencing Memorandum, Doc. 44.
[2] The phrase recalls the sign over the entrance to the Auschwitz death camp operated by Nazi Germany in occupied Poland during World War Two, bearing the words: "Arbeit Macht Frei," meaning "work will set you free." *See* http://70.auschwitz.org/index.php?option=com_content&view=article&id=212&Itemid=179&lang=en.

1

referenced the Schutzstaffel – the SS- that protected Adolf Hitler and the Nazi Party in Germany and German occupied Europe.[3]

Following the conclusion of President Trump's speech at approximately 1:15 pm, the crowd began to grow even more rapidly, supplemented by those who had walked the mile and a half from the Ellipse to the Capitol.  Packer also walked to the Capitol after the rally, and upon coming up to the grounds of the Capitol, saw barricades and police outside. He was at the West Front of the Capitol and climbed the Northwest Stairs to the Upper West Terrace after rioters fought with police officers and broke through the line. Assaults against law enforcement on the West Front of the Capitol Grounds made the rioters' entry into the United States Capitol Building on January 6, 2021, possible.  Initiated by the most fervent smaller groups and individuals within the crowd and using the mob itself as a cloak for their actions, each blow helped the crowd penetrate further into the United States Capitol Police's ("USCP") defenses until the building itself was accessible and the occupants were at risk.  The physical breaches of the building can therefore be traced directly back to the assaultive conduct on the grounds of the West Front.

At 2:03 p.m., Metropolitan Police Department officers responding to USCP officers' calls for help began broadcasting a dispersal order to the crowd.  It began with two blaring tones, and then a 30-second announcement, which was played on a continuous loop:

> This area is now a restricted access area pursuant to D.C. Official Code 22-1307(b).  All people must leave the area immediately.  This order may subject you to arrest and may subject you to the use of a riot control agent or impact weapon.

Despite the warning and the deployment of riot control agents and impact weapons, few members of the crowd left.  On the contrary, the mob in the restricted area continued to grow as

---

[3] https://www.history.com/topics/world-war-ii/ss

crowds streamed towards the West Front, which looked like a battle scene, complete with an active melee and visible projectiles. Packer went up the Northwest front stairs to the Upper West Terrace sometime after 2:10 p.m., after rioters fought police and gained access to the Upper West Terrace.

Although rioters were climbing through broken windows by the Senate Wing door, Packer entered the building anyway, only six minutes after the initial breach of those doors. Despite observing violence once inside, Packer continued throughout the Capitol walking deeper into the building. He was in the crowd when rioters confronted officers in the Crypt. He was with a crowd that pushed past police at the Memorial Doors to get deeper inside, to the Rotunda, Statuary Hall, and the House.

Packer was in the crowd as the rioters in the Statuary Hall connector pushed past the police line into the House side of the Capitol. He was present when a rioter, Ashli Babbit, tried to climb through a broken window into the hallway by the House Chamber, and was shot. Only then did he leave the building as armed police were expelling people from the building. Packer himself was herded out by armed officers in riot gear.

Packer was charged by Complaint on January 12, 2021. Doc. 1, Complaint, then by Information on February 10, 2021, Doc. 8, Information, with two misdemeanor counts: Count One: Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1), and Count Two: Violent Entry and Disorderly Conduct and Parading, Demonstrating, or Picketing in a Capitol Building Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 40 U.S.C. § 5104(e)(2).

On January 26, 2022, Packer pled guilty to Count 2 of the Information - the Violent Entry and Disorderly Conduct and Parading, Demonstrating, or Picketing in a Capitol Building Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 40 U.S.C. §

5104(e)(2). Minute Entry, Plea Hrg. 01/26/2022; Doc. 37, Plea Agreement. In the Plea Agreement, Packer waived his right to appeal or collaterally attack certain aspects of his conviction and sentence. Id., ¶¶ 9(d), (e). Specifically, Section 9(d) stated:

> Your client agrees to waive, insofar as such waiver is permitted by law, the right to appeal the conviction in this case on any basis, including but not limited to claim(s) that (1) the statute(s) to which your client is pleading guilty is unconstitutional, and (2) the admitted conduct does not fall within the scope of the statute(s). Your client understands that federal law, specifically 18 U.S.C. § 3742, affords defendants the right to appeal their sentences in certain circumstances. Your client also agrees to *waive the right to appeal the sentence in this case, including but not limited to any term of imprisonment, fine, forfeiture, award of restitution, term or condition of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the Court sentences your client above the statutory maximum or guidelines range determined by the Court.* In agreeing to this waiver, your client is aware that your client's sentence has yet to be determined by the Court. Realizing the uncertainty in estimating what sentence the Court ultimately will impose, *your client knowingly and willingly waives your client's right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement.* Notwithstanding the above agreement to waive the right to appeal the conviction and sentence, your client retains the right to appeal on the basis of ineffective assistance of counsel, but not to raise on appeal other issues regarding the conviction or sentence.

(Emphasis added.)

This Court sentenced Packer to 75 days imprisonment, and imposed restitution, per the plea agreement, of $500.00, and the $10.00 special assessment. The maximum term of imprisonment for this count of conviction was six months. The Court ordered Packer to surrender for service of his sentence at the institution designated by the Bureau of Prisons (BOP) upon being notified by Probation or by the Pretrial Service Office. Doc. 54, Judgement and Conviction.

On September 29, 2022, the Defendant filed a Notice of Appeal, despite the appeal waiver he agreed to in his plea agreement. Doc. 56, NOA.

On October 16, 2022, Defendant filed a Motion to stay the start of his sentence, and to be allowed to remain on bond pending appeal. Doc. 58, Def. Motion. He stated that he has been

ordered to report to serve his sentence with BOP on October 20, 2022, four days from the date he filed his motion. *Id.* at 2. Packer states in his Motion that he is not a flight risk, and says he intends on appeal to challenge the length of his sentence in light of how his sentence compares to others who he claims are similarly situated. *Id.* at 6. Packer further contends that the expression on his clothing was an improper factor for the court to consider in sentencing him. *Id.*

## ARGUMENT

### I. The Law Presumes that a Sentenced Defendant will be Detained Pending Appeal.

Under 18 U.S.C. § 3143(b), "a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal" shall be detained pending an appeal unless the Court finds:

(A) . . .that the person is not likely to flee or pose a danger to the safety of any person or the community if released. . . *and*

(B) . . .that the appeal is not the purpose of delay and raises a substantial question of law or fact likely to result in:

   (i) reversal,

   (ii) an order for a new trial,

   (iii) a sentence that does not include a term of imprisonment, or

   (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1) (emphasis added).

A defendant "cannot be released unless the appeal raises a substantial question likely to result in a reversal of all counts on which imprisonment is imposed." *United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1987). In *Perholtz*, the court adopted what it described as a "more demanding" standard for bail pending appeal than that applied by other courts because it was in

"better … accord with the expressed congressional intent to increase the required showing on the part of the defendant." *Id*. at 555-56. Under that standard, "a substantial question is a close question or one that very well could be decided the other way." *Id*. at 556 (cleaned up). The defendant cannot meet that standard.

## II. Packer Fails to Raise a Substantial Issue of Law or Fact.

The defendant fails to raise a substantial question of law or fact because the issues the defendant indicates he intends to argue on appeal are squarely foreclosed by the appeal waiver in his plea agreement. As noted above, the defendant claims that his sentence was longer than that imposed on other individuals sentenced in connection with the attack on the Capitol on January 6 and that the Court improperly focused on one factor, namely, an article of clothing the defendant was wearing. But the defendant waived "the manner in which the sentence was determined" under the plea agreement, *see* Doc. 37, Plea Agreement, ¶¶ 9(d), (e), and those appellate challenges fall firmly within that waiver.

The defendant does not contest that the appeal waiver in this case was infirm. An appeal waiver is "presumptively valid." *United States v. Lee,* 888 F. 3d 503, 506 (D.C. Cir. 2018). An appeal waiver that is "knowing, intelligent, and voluntary" is usually enforced, and an appeal will be dismissed if the issue falls within the scope of the waiver in the plea agreement. *United States v. Jackson*, 26 F. 4th 994, 998 (D.C. Cir. 2022) (citing *United States v. Adams*, 780 F. 3d 1182 (D.C. Cir. 2015). An appeal waiver is knowingly, intelligently, and voluntarily given if the defendant "is aware of and understands the risks involved" in the waiver. *United States v. Guillen,* 561 F. 3d 527, 529 (D.C. Cir. 2009). Packer admitted in his Acknowledgement and before the Court at sentencing that he had discussed the plea agreement with his attorney; that he knew what he was doing; and that he was entering into the plea knowingly and voluntarily. *See, e.g.,* Doc. 37, Plea Agreement, ¶¶ 7 & 9. Packer cannot therefore meet the standard needed to set aside the

appeal waiver and go forward with his appeal. It follows that his appeal does not raise "a substantial question of law or fact," let alone one likely to result in a disposition favorable to the defendant.

WHEREFORE, for all the foregoing reasons, the United States respectfully requests that the Court deny Robert Packer's Motion to Stay his Sentence and to Remain on Personal Recognizance Pending Appeal.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar Number 481052

By:    */s/ Mona Lee M. Furst*
        MONA LEE M. FURST
        KS Bar No. 13162
        Assistant United States Attorney
        Detailee – Capitol Siege Division
        U.S. Attorney's Office
        601 D. Street, N.W.
        Washington, D.C.  20579
        Office: 316-269-6537